Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAUL PLUMMER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1203-CR-106 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara Crawford, Judge
Cause No. 49G21-1109-CM-68509

**September 28, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Paul Plummer appeals his conviction for Class A misdemeanor invasion of privacy. We reverse.

**Issue**

Plummer raises one issue, which we restate as whether there is sufficient evidence to support his conviction.

**Facts**

On August 22, 2011, an ex parte order for protection was issued. The protective order generally restrained Plummer "from any contact with" Jared Rutan and more specifically prohibited Plummer "from harassing, annoying, telephoning, contacting or directly or indirectly communicating with" Rutan. Ex. 1. Plummer was also ordered to stay away from Rutan's residence and place of employment, but he was not ordered to stay away from any other places.

Rutan and Plummer belonged to the same gym. Although Rutan did not usually go the gym on Sundays, he was there on the afternoon of September 25, 2011. Plummer, who saw a car similar to Rutan's in the parking lot earlier in the afternoon, assumed the car belonged to a gym employee when it was still there three to four hours later.

While Rutan was working out, he saw Plummer enter the gym and talk to people at the front desk for a while. Plummer and another person then walked directly from the front desk to the locker room while engaged in conversation. To get to the locker room, Plummer had to walk past the area where Rutan was working out. As Plummer passed Rutan, they made eye contact, and Plummer continued walking to the locker room.

Rutan described the interaction with Plummer as "very brief" eye contact that lasted "a couple of seconds." Tr. p. 17. Plummer did not gesture at or speak to Rutan. Rutan then called the police.

Plummer was arrested, and the State charged him with Class A misdemeanor invasion of privacy. Following a bench trial, Plummer was found guilty as charged. He now appeals.

**Analysis**

Plummer argues there is insufficient evidence to support his conviction. In reviewing the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses, and we respect a fact-finder's exclusive province to weigh conflicting evidence. Joslyn v. State, 942 N.E.2d 809, 811 (Ind. 2011). We consider only the probative evidence and reasonable inferences supporting the verdict and will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

A person who knowingly or intentionally violates an ex parte protective order commits Class A misdemeanor invasion of privacy. Ind. Code § 35-46-1-15.1(2). Plummer argues that he did not violate the terms of the protective order because he did not engage in any prohibited conduct. The State asserts that Plummer knowingly or intentionally made visual contact with Rutan in violation of the protective order.

We agree with Plummer. The protective order generally restrained Plummer "from any contact with" Rutan and more specifically prohibited Plummer "from

3

harassing, annoying, telephoning, contacting or directly or indirectly communicating with" Rutan. Ex. 1. By Rutan's own testimony, Plummer only made "very brief" eye contact with Rutan as Plummer passed him while walking directly to the locker room and talking to someone else. Tr. pp. 17, 29. Plummer did not say anything to Rutan. Plummer did not gesture to Rutan. Nothing in the record indicates that Plummer acknowledged Rutan in any way. Under these facts, the evidence is insufficient to establish that Plummer contacted Rutan so as to violate the protective order.

## Conclusion

The evidence is insufficient to establish that Plummer violated the protective order. We reverse.

Reversed.

VAIDIK, J., and MATHIAS, J., concur.